UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Ronald & Alice Cohen,<br><br>    Plaintiffs,<br><br>v.<br><br>Federal Insurance Company,<br><br>    Defendant. | Civil Action: __1:20-cv-689_____ |

**PETITION FOR DECLARATORY JUDGMENT
AND COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Ronald and Alice Cohen, by and through counsel, Shaheen & Gordon, P.A., hereby bring this Petition for Declaratory Judgement and Complaint against Federal Insurance Company and demand a jury trial on all counts.  In support thereof, Plaintiffs state as follows:

**PARTIES**

1.      Ronald and Alice Cohen ("Mr. Cohen" and "Mrs. Cohen") are residents of Luxuria 302, 2500 S. Ocean Boulevard, Boca Raton, Florida.

2.      Federal Insurance Company ("Federal") is an Indiana Domestic Insurance Corporation with a principal place of business located at 251 North Illinois Suite 1100, Indianapolis, Indiana and identifying its registered agent as CT Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

3.      Upon information and belief, Federal at all relevant times was and is a wholly owned subsidiary of Chubb INA Holdings, Inc. which is owned 80% by Chubb Group Holdings Inc. and 20% by Chubb Limited.  Chubb Ground Holdings Inc. is a wholly owned subsidiary of Chubb Limited.

1

4. Federal issued a Chubb Masterpiece insurance policy to plaintiffs, Policy No. 14212957-01 (the "Federal Policy") with a policy period of 5/20/18 to 5/20/19 which included excess insurance coverage of $10,000,000, including excess uninsured/underinsured motorist coverage.

5. The Federal Policy also includes New Hampshire and Florida personal liability coverage and in that regard indicates that "This part of your Masterpiece Policy provides you with personal liability coverage for which your or a family member may be legally responsible anywhere in the world unless stated otherwise or an exclusion applies."

6. With regard to excess liability coverage, The Federal Policy indicates "This part of your Masterpiece Policy provides you with liability coverage in excess of your underlying insurance anywhere in the world unless stated otherwise or an exclusion applies"

7. The Federal Policy at issue provided insurance coverage in New Hampshire for Mr. Cohen's 1994 Harley Davidson motorcycle which was garaged in New Hampshire.

8. This case is primarily based on Mrs. Cohen's uninsured/underinsured motorist claims against Federal as they relate to a $10,000,000.00 excess coverage and Federal's improper denial of said coverage.

9. This case is based on Mrs. Cohen's bodily injury and excess insurance claims as described below.  It does not relate to Mr. Cohen's bodily injury claims and he is included only for the purpose of making loss of consortium claims.

10. Mr. Cohen cannot bring his own claims related to excess insurance at this time because he has not yet fully resolved his case against the underlying defendant.

**JURISDICTION AND VENUE**

11. Plaintiffs reallege each paragraph above as if set forth herein.

12. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. sec. 1332 because Plaintiffs and all Defendant are citizens from different states and the amount in controversy is greater than $75,000.

13. Venue is proper in this District because a substantial portion of the events forming the basis of this suit occurred in the District.

## COLLISION FACTS/NEGLIGENCE OF TORTFEASOR

14. Plaintiffs reallege each paragraph above as if set forth herein.

15. On June 15, 2018, Mr. Cohen was operating his 1994 Harley Davidson motorcycle heading South on Endicott North Street in Laconia, Belknap County, New Hampshire and his wife Mrs. Cohen was riding along as a passenger.

16. At the same time and place, Mr. Joseph Valent ("the tortfeasor") had been operating a motorcycle heading West on Hayes Road and attempted to pull out onto Endicott North Street in a southerly direction.

17. The tortfeasor told a responding police officer that he "did not see" Mr. Cohen's motorcycle, and when the tortfeasor attempted to pull out onto Endicott North Street he violently collided with Mr. Cohen's motorcycle.

18. The tortfeasor failed to use reasonable care and was at fault for the collision.

19. As a direct, proximate and foreseeable result of the collision and the tortfeasor's negligence, Mrs. Cohen suffered and continues to suffer from serious and permanent injuries, including but not limited to brain hemorrhaging and concussive injuries, incurred severe and prolonged pain and suffering, incurred medical expenses and lost wages in excess of $75,000 as well as endured and continues to endure loss of enjoyment of life.

20. At all relevant times, Mr. Cohen was the lawful husband of Mrs. Cohen.

21. As a direct, proximate, and foreseeable result of the collision, Mr. Cohen did suffer and continues to suffer the loss of service, society, companionship, and consortium of his wife, which he enjoyed prior to this incident.

## **INSURANCE BACKGROUND**

22. Plaintiffs reallege each paragraph above as if set forth herein.

23. Relevant to this case, three insurance policies provided coverage for Mr. and Mrs. Cohen at the time of the collision:

   a. The tortfeasor carried an Allstate Insurance ("Allstate") policy, policy number 933252735, which provided $100,000.00 per person/$300,000.00 per accident in liability coverage.

   b. Mr. and Mrs. Cohen carried a Foremost Insurance Company ("Foremost") policy, policy number 0070303737, which provided $250,000.00 per person/$500,000.00 per accident in uninsured/underinsured motorist coverage; and

   c. Mr. and Mrs. Cohen carried the above-mentioned Federal Insurance Company excess policy, policy number 14212957-01, which provided $10,000,000.00 in excess coverage, including uninsured/underinsured motorist coverage that is the subject of this complaint.

24. On March 5, 2019, Allstate offered its policy limit of $100,000.00 to settle Mrs. Cohen's bodily injury claims against the tortfeasor.

25. On March 8, 2019, a representative from Federal responded to the Plaintiffs' request for permission to accept Allstate's offer and asserted that "[t]he above-referenced policy

[1421295701] does not provide excess underinsured motorist benefits coverage nor does it contain a Consent to Settle clause."

26. On March 11, 2019, a representative from Foremost provided consent for Mrs. Cohen to accept the offer from Allstate.

27. On May 10, 2019, Mrs. Cohen settled her claims against the tortfeasor with Allstate for $100,000.00.

28. On December 31, 2019, Foremost offered $150,000.00 to Mrs. Cohen in exchange for a release of all claims against it, representing the $250,000.00 policy limit minus a $100,000.00 offset for the Allstate settlement.

29. The Foremost policy declaration sheet covering the period 7/5/17 to 7/5/18 and amended declarations effective 8/31/17 and 5/22/18 confirm that the 1994 Harley Davidson at all relevant times was garaged in New Hampshire.

30. On January 2, 2020, undersigned counsel provided notice of the settlement to Federal, and a Federal representative confirmed its position that excess uninsured/underinsured motorist coverage was not available under the Federal Policy.

31. On January 10, 2020, Mrs. Cohen settled her claims against Foremost for $150,000.00 and seeks uninsured/underinsured motorist coverage from Federal.

## THE FEDERAL POLICY

32. Plaintiffs reallege each paragraph above as if set forth herein.

33. The Federal excess policy that covered Mr. and Mrs. Cohen at the time of collision, was part of the Cohen's Chubb Masterpiece policy number 14212957-01, was effective as of May 20, 2018 and was issued by Federal.

34. A certified copy of the Federal Policy, provided by Federal to undersigned counsel on or about March 11, 2019, contained four pages addressing excess uninsured/underinsured motorist coverage, two of which allowed the insureds to select a limit for or reject excess uninsured/underinsured motorists protection, sign and date.

35. This part of the Federal Policy explains that excess uninsured motorist coverage includes coverage for damages caused by "operators whose bodily injury liability insurance or bond limits are less than the amount of bodily injury losses incurred . . .".

36. The specific form at issue allows the insured first to specifically reject excess uninsured/underinsured motorist coverage by checking off a box and then gives the insured the option of selecting a coverage amount other than $10,000,000.

37. More specifically, the form provides: "My limit of excess liability coverage is $10,000,000. I elect the following limit of excess uninsured motorists protection: . . .".

38. The options provided are all less than $1,000,000 in coverage or a blank to be filled in.

39. There is no marking whatsoever on the page and there is no signature on the page.

40. The Federal Policy indicates that excess liability coverage is provided in the amount of $10,000,000.00.

41. The Federal Policy indicates that excess liability coverage is provided for the 1994 Harley Davidson involved in the above-referenced collision.

42. The Federal Policy further provides that "Excess uninsured motorists protection shall be in excess of the underlying insurance or the Required Primary Underlying insurance, whichever is greater" and that for purposes of excess coverage in this instance the required

primary underlying insurance is $250,000/$500,000, an amount which the Cohens maintained on the 1994 Harley Davidson.

43. Pursuant to Federal Policy excess uninsured/underinsured motorist coverage was effective for vehicles owned or registered by the Cohens which were insured by Federal.

44. The 1994 Harley Davidson was owned and registered by Mr. Cohen and was insured by Federal.

45. The Federal Policy also indicates that "[t]he amount of UM/UIM is determined by where the vehicle is garaged, which appears in the Mandated Coverages Section."

46. No Mandated Coverages Section was included with the certified copy of the Federal Policy and Federal has confirmed that there is no Mandated Coverages Section as part of the excess policy.

47. The 1994 Harley Davidson involved in the above-referenced collision was garaged in New Hampshire at all relevant times.

48. The 1994 Harley Davidson involved in the above-referenced collision at the time of the collision was registered in New Hampshire at all relevant times.

49. The Federal Policy includes New Hampshire Personal Liability Coverage and the 1994 Harley Davidson falls within the definition of a "Registered Vehicle" provided therein.

50. The Cohens satisfied all terms of the Federal Policy required for excess uninsured/underinsured motorist coverage for the 1994 Harley and the accident at issue.

51. RSA 264:15, I provides in part: "When an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, the insured's uninsured motorist coverage ***shall automatically*** be equal in amounts and limits to the liability coverage elected. For the purposes of this paragraph umbrella or excess policies that

provide excess limits to policies described in RSA 259:61 shall also provide uninsured motorist coverage equal to the limits of liability purchased, *unless the named insured rejects such coverage in writing*." (Emphasis added).

52. The Cohens did not reject uninsured/underinsured motorist coverage on Federal Policy with Federal in writing or otherwise.

53. A February 10, 2020 letter to Federal citing the above-cited statute and requesting "any and all written rejections or subsequent elections of uninsured motorist coverage by Mr. or Mrs. Cohen which applied to above-captioned policy on the date of the incident, regardless of when they were executed" has gone unanswered.

### FIRST COUNT: REQUEST FOR DECLARATORY JUDGMENT - NEW HAMPSHIRE FINANCIAL RESPONSIBILITY ACT AND FLORIDA STATUTE § 627.727

54. Plaintiffs reallege each paragraph above as if set forth herein.

55. As set forth above, Mr. and Mrs. Cohen are the beneficiaries of an insurance policy which is subject to the terms of RSA Chapter 264, the "Financial Responsibility Act."

56. Mr. and Mrs. Cohen elected to purchase liability insurance in an amount greater than the minimum insurance coverage required by RSA 259:61.

57. In addition, Mr. and Mrs. Cohen did not, at any relevant time, reject uninsured or underinsured motorist coverage in writing or otherwise as required by RSA 264:15.

58. Furthermore, at all relevant times, the vehicle in question was garaged and registered in New Hampshire.

59. Also, as set forth above the Mandated Coverages Section which was referenced in the certified Federal Policy, was not included with the certified policy, has not been otherwise provided and as represented by Federal, was not included with the Federal Policy.

60. Under the circumstances alleged herein, and based upon the policy at issue, New Hampshire law applies to this policy and as such the Federal Policy provided uninsured/underinsured motorist coverage, which applied to the 1994 Harley Davidson, equal to the limits of liability coverage selected, which is $10,000,000.

61. Furthermore, given that the Mandatory Coverages Section was not included, and the facts that the motorcycle was garaged and registered in New Hampshire, the Cohens had a reasonable expectation that New Hampshire law applied to the policy and that they were covered with excess uninsured/underinsured motorist coverage in the amount of $10,000,000 pursuant to the policy.

62. Florida law is similar to New Hampshire law and commands the same analysis and result because there was no informed rejection of uninsured/underinsured motorist coverage.

63. Pursuant to Fla. Stat. Ann. § 627.727 (West):

> (1) "No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state ***unless uninsured motor vehicle coverage is provided therein or supplemental thereto*** for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section ***is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage*** on behalf of all insureds under the policy…" (Emphasis added).
> (2) "The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured…"

64. Again, the Cohens did not reject in writing or otherwise the excess uninsured/underinsured motorist coverage.

65. Under the circumstances alleged herein, even if Florida law applies to this policy, the Federal policy provided to the Cohens uninsured/underinsured motorist coverage equal to the limits of liability coverage selected, which is $10,000,000 pursuant to the policy.

66. Accordingly, and as set forth below, Mr. and Mrs. Cohen request that this Honorable Court declare that their Federal policy number 14212957-01 provides uninsured/underinsured coverage for the above-referenced collision in the amount of $10,000,000.00.

**SECOND COUNT: REQUEST FOR DECLARATORY JUDGMENT -
PLAIN LANGUAGE OF THE POLICY AND REASONABLE EXPECTATION OF
COVERAGE**

67. Plaintiffs reallege each paragraph above as if set forth herein.

68. In the alternative, based on the totality of the facts, the Cohens had a reasonable expectation of $10,000,000 uninsured/underinsured motorist coverage under the Federal Policy due to ambiguities in the policy with regard to excess uninsured/underinsured motorist coverage.

69. At the outset, the fact that no Mandatory Coverages Section was included with the Federal Policy creates an ambiguity as it is referenced within the excess uninsured/underinsured motorist form and specifically references which state's law applies to the coverage.

70. In addition, the selection/rejection form for excess uninsured/underinsured motorist coverage is ambiguous and a reasonable expectation would be that if one did not return the form, the full amount of $10,000,000 excess coverage was effective.

71. The Federal Policy first provides at page 1 that Federal had previously asked the Cohens "to select a limit and type of excess uninsured motorist protection by signing and returning a selection form to us."

72. The Federal Policy further provides on page 2 that "Excess uninsured motorists protection does not apply to vehicles which are owned or registered by you or a family member that are not insured by us;" the 1994 Harley Davidson was insured by Federal.

73. The Federal Policy also provides on page 2 that "If no changes are desired, it is NOT necessary to return the enclosed form."

74. The terms "Excess" "uninsured" and "underlying insurance" are not defined under the definition section of the Federal Policy.

75. Rather, the "selection form" at page 1 of the policy provides that "Excess uninsured motorists protection shall be in excess of the underlying insurance or the Required Primary Underlying Insurance, whichever is greater".

76. There is no other mention of the terms "underlying insurance" or "Required Primary Underlying Insurance" in this selection form on excess uninsured/underinsured motorist coverage nor is it included in the definition section of the Federal Policy.

77. The terms "underlying insurance" and "Required Primary Underlying Insurance" are mentioned in various other sections of the policy but there is no definition for "Required Primary Underlying Insurance" and the definition for "underlying insurance" is not found until over 100 pages in to the policy which is far from clear providing only that:

> "underlying insurance" includes all liability coverage other than this part of your policy that applies to the covered damages, except for other insurance purchased in excess of this policy"

78. Given the above, and the meaning of the terms are certainly ambiguous in the setting of the excess uninsured/underinsured motorist "election." It would be a reasonable interpretation for the Cohens to believe that their excess liability policy already included the

11

excess uninsured/underinsured motorist coverage they are seeking herein and that they need not fill out the form.

79. In addition, as set forth above, the actual selection form is far from clear and unambiguous such that a reasonable interpretation of the form is that nothing need be filled out for coverage to apply.

80. This is particularly true given that the coverage involved the motorcycle which was garaged in New Hampshire and where New Hampshire law provided that coverage is "automatic" in the absence of a signed, written acknowledgment rejecting coverage.

81. In addition, neither the form, nor the Federal Policy defines "Excess UM"

82. The above reference language and other language in the Federal policy create an ambiguity with regard to excess uninsured/underinsured motorist coverage.

83. Overall and including for the reasons set forth above, the terms of the Federal Policy are ambiguous with regard to uninsured and underinsured motorist coverage and the Cohens had a reasonable expectation of excess uninsured/underinsured motorist coverage in the amount of $10,000,000.

## THIRD COUNT: BREACH OF CONTRACT

84. Mr. and Mrs. Cohen were parties to and are the beneficiaries of the insurance policy issued by Federal which contractually obligates Federal to pay Plaintiffs damages that they are legally entitled to recover based on the negligence of the owner or operator of an underinsured/underinsured motor vehicle.

85. Based on the foregoing obligation, Federal is contractually required to pay compensatory damages to Mr. and Mrs. Cohen that they are legally entitled to recover from the tortfeasor because of injuries caused by the above-referenced collision and as outlined above.

86. In violation of the terms of the Federal Policy, Federal has failed, neglected, and refused to pay said damages to Mr. and Mrs. Cohen as set forth above, in violation of the terms of the insurance policy and thereby constituting a material breach of Federal's contractual obligation to Mr. and Mrs. Cohen.

87. As a direct and proximate result of the foregoing, Mr. and Mrs. Cohen have suffered harm, damage, and are entitled to recover their damages including but not limited to those damages detailed in the preceding paragraphs, as well as any and all other direct, indirect, consequential, and foreseeable damages, plus interest and costs, all within the jurisdictional limits of this Honorable Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment as follows:

A. Rule, Order and Decree that, based on their claims arising out of the aforementioned collision, Federal Insurance Company has on obligation to provide underinsured/underinsured coverage to Mr. and Mrs. Cohen in the amount of $10,000,000.00, excepting only any applicable offsets;

B. Enter judgment in their favor on the breach of contract claim;

C. Award them all the damages to which they are entitled, including attorney's fees and costs pursuant to RSA 491:22-b; and

D. Grant such further relief as it deems just and equitable.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: June 10, 2020 | /s/ D. Michael Noonan |
|  | D. Michael Noonan, Esq. #8214 |
|  | mnoonan@shaheengordon.com |
|  | Attorney for the Plaintiffs |
|  | SHAHEEN & GORDON, P.A. |
|  | 353 Central Avenue, 2nd Floor |
|  | Dover, NH  03821-0977 |
|  | (603) 749-5000 |